IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

```
* * * * * * * * * * * * * * * * *    C.R. NO. 06-142ML
                                *
UNITED STATES OF AMERICA        *
                                *
    VS.                         *    JANUARY 30, 2007
                                *    9:30 A.M.
SAMOEUN NAK                     *
                                *
* * * * * * * * * * * * * * * * *    PROVIDENCE, RI
```

BEFORE THE HONORABLE MARY M. LISI,

DISTRICT JUDGE

(Change of Plea)

APPEARANCES:

FOR THE GOVERNMENT: SANDRA BECKNER, AUSA
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT: THOMAS G. GULICK, ESQ.
Law Offices of Edward A. Shapira
400 Reservoir Avenue
Providence, RI 02903

Court Reporter: Karen M. Wischnowsky, RPR-RMR-CRR
One Exchange Terrace
Providence, RI 02903

30 JANUARY 2007 -- 9:30 A.M.

THE COURT: This is the matter of the United States versus Samoeun Nak. Am I pronouncing your name correctly?

THE DEFENDANT: Yes.

THE COURT: Would you stand up, please.

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Nak, you understand that you are before the Court today to enter a plea of guilty to the five charges in the Indictment in this case? Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And those charges are as follows: In Count I, possession with the intent to distribute cocaine in violation of Title 21 of the United States Code, Section 841(a)(1) and (b)(1)(C).

In Count II, you're charged with possession with the intent to distribute cocaine base in violation of Title 21, Sections 841(a)(1) and (b)(1)(C).

Count III charges that you possessed with the intent to distribute marijuana in violation of Title 21, Sections 841(a)(1) and (b)(1)(D).

Count IV charges you with being a felon in possession of a firearm in violation of Title 18, Section 922(g)(1).



And Count V charges you with possessing a

firearm in furtherance of a drug trafficking crime in violation of Title 18, Section 924(c).

So you understand you're here today to plead guilty to all five of those charges?

THE DEFENDANT: Yes, your Honor.

THE COURT: Would you raise your right hand, please.

(Defendant sworn)

THE COURT: Mr. Nak, I'm going to be asking you a series of questions this morning. The purpose of my asking you these questions is to make sure you understand why you're here and the consequences of entering a plea of guilty to these charges.

If at any time during the questioning you don't understand a question, I want you to tell me that so I can give you further explanation. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If at any time during the questioning you wish to speak to your lawyer, I want you to tell me that, and I will give you an opportunity to speak to him. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, I'm also advising you that you





are under oath and if you answer any of my questions falsely, those false answers can be used against you in another prosecution for perjury or for making a false

statement. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Would you state your full, true name for the record.

THE DEFENDANT: Samoeun Nak.

THE COURT: How old are you?

THE DEFENDANT: I'm 28.

THE COURT: How far did you go in school?

THE DEFENDANT: To eleventh grade.

THE COURT: The eleventh grade?

THE DEFENDANT: Yes.

THE COURT: And where was that?

THE DEFENDANT: Cranston East high school.

THE COURT: Did you have any schooling after you left the eleventh grade?

THE DEFENDANT: No. I got my GED.

THE COURT: Could you keep your voice up, please.

THE DEFENDANT: I got a GED.

THE COURT: Where did you get your GED?

THE DEFENDANT: A school in Cranston.

THE COURT: A school in Cranston? You don't





know the name of it?

THE DEFENDANT: No. I forget the name.

THE COURT: But you did complete your GED?

THE DEFENDANT: Yes.

THE COURT: Do you have any difficulty at all

reading or understanding English?

THE DEFENDANT: No.

THE COURT: Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT: No, your Honor.

THE COURT: I have a copy of a certificate that your lawyer filed. It indicates that as of January 11, you were not taking any form of medication. Is that still the case today?

THE DEFENDANT: No.

THE COURT: Well, are you taking medication now?

THE DEFENDANT: No, I'm not.

THE COURT: That's what I'm asking you.

THE DEFENDANT: Oh, okay.

THE COURT: When I ask about medication, I'm including even anything you may have taken for a headache or a cold. Have you taken any medicine whatsoever?

THE DEFENDANT: Yes.





THE COURT: What did you take?

THE DEFENDANT: Tylenol.

THE COURT: When did you take that?

THE DEFENDANT: This morning.

THE COURT: And what was that for?

THE DEFENDANT: A cold.

THE COURT: Okay. Does that Tylenol in any way

affect your ability to understand what's going on around you?

THE DEFENDANT: No.

THE COURT: Have you received a copy of the Indictment?

THE DEFENDANT: Yes, I have, your Honor.

THE COURT: And have you gone over the charges in that Indictment and the case in general with your lawyer?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you fully satisfied with the advice and representation you've received from your lawyer?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, I have a copy of a plea agreement, Mr. Nak, that bears your signature.

Mr. Gulick, if you would put that in front of him, please.





Do you remember signing that document?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before you signed it, did you read it?

THE DEFENDANT: Yes, I did.

THE COURT: Before you signed it, did you discuss its terms with your lawyer?

THE DEFENDANT: Yes, I did, your Honor.

THE COURT: What I'm going to do today is to

summarize the terms of this plea agreement to make sure you do understand it. If you have any questions about this plea agreement, today is the day to ask those questions.

We'll start on page 1 with the paragraph numbered 1. Do you see where it is entitled Defendant's Obligations?

THE DEFENDANT: Yes.

THE COURT: These are the things that you have promised or agreed to do. First, you have agreed in paragraphs 1(a), (b), (c), (d) and (e) to plead guilty to the five charges I read off to you at the beginning of this hearing. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And that's why you're here today.

THE DEFENDANT: Yes.





THE COURT: If you look at the top of page 2, paragraph 2(f) -- rather 1(f) says that you have agreed that the semiautomatic pistol described in that paragraph was properly seized by the Government agents and you agree that it is subject to forfeiture and, further, by the terms of this agreement, you're giving up any rights or claims that you might have to that pistol. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: In other words, you're not going to get it back.

THE DEFENDANT: I don't want it back.

THE COURT: You don't want it back. Well, you're not going to get it back. You've basically given it over to the Government. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Further on in that paragraph, you say that you're the sole and rightful owner of the gun and, again, you're agreeing to withdraw any claims you might have, whether they're civil or administrative claims. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, right at the bottom of that page, paragraph number 2 is entitled Government's

Karen M. Wischnowsky, RPR-RMR-CRR

9

Obligations. Do you see that?

THE DEFENDANT: Yes.

THE COURT: If you flip over to page 3 and start with paragraph 2(a) at the top -- Ms. Beckner, I think that there's a typographical error in that paragraph. It seems to make reference to a mandatory minimum, but I don't believe that there is one in this case. Is there?

MS. BECKNER: There is no mandatory minimum, your Honor.

THE COURT: However, there is a mandatory consecutive for the 924, isn't there?

MS. BECKNER: Yes, your Honor.

THE COURT: Okay. Why don't you and Mr. Gulick cross out the reference to "whichever is greater" since it's not applicable in this case.

Have your client initial it, please, Mr. Gulick. Explain to him what we're doing.

(Counsel confers with Defendant)

THE COURT: Mr. Nak, what we've just done here is removed some superfluous language from that paragraph 2(a) at the top of page 3 just so that the agreement -- the plea agreement makes sense.

THE DEFENDANT: Okay.

THE COURT: What paragraph 2(a) says is that the





Government has agreed that it will recommend that the Court impose a term of imprisonment at the lowest point of the guideline range for your offense level as determined by the Court under the sentencing guidelines. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you talked to your lawyer about how the guidelines work?

THE DEFENDANT: A little, yes.

THE COURT: Well, what does a little mean?

THE DEFENDANT: Yeah, we talked about the guidelines.

THE COURT: Did he show you the book?

THE DEFENDANT: Yes.

THE COURT: With all the numbers at the back of

it?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the sentencing guidelines require the Court to look at any past record of convictions that you might have and then to take into account all of the facts and circumstances involved in this case, including the kinds of drugs involved, the amounts involved, the guns involved; and then after we review all those facts, we come up with what they call an offense level? Do you understand





that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And that provides a guideline range of sentences. What the Government has agreed here is to recommend a sentence at the lowest point of that guideline range, whatever it may happen to be because at this point nobody knows what it is. The Court will determine what it is. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Did your lawyer explain that to you?

THE DEFENDANT: Yes, he has.

THE COURT: So today no one can tell you exactly what sentence you're going to get. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. That paragraph has another provision, however, that I want to make sure you

understand. What it says is that if you ask your lawyer to file a motion so that you can receive a downward departure under the guidelines or ask your lawyer to file a motion so that you can receive a sentence below that guideline range, then the Government is relieved of its obligation to recommend the low end and they're free to recommend any term of imprisonment within that guideline range. Do you





understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. In paragraph 2(b), the Government has agreed that it will recommend a two-level decrease in your offense level for acceptance of responsibility. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Paragraph 2(c) says that if your offense level is 16 or greater, the Government has agreed to file a motion so that you can receive an additional one-level decrease for timely acceptance of responsibility. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And then if you go over to page 4, paragraph 2(d) says that the Government will be free to recommend any combination of supervised release, fines and restitution it deems appropriate. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, paragraph 2(e) says that you understand that you have a prior felony drug conviction and that if the Government had wanted to, it could have filed a sentencing enhancement information which would have subjected you to a maximum penalty in this case of 30 years. Do you understand that?





THE DEFENDANT: Yes.

THE COURT: But because you've agreed to plead guilty, the Government is giving up its right to file that sentencing enhancement information. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: That's huge.

THE DEFENDANT: Yes.

THE COURT: That's something your lawyer negotiated with the Government. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. If you look at paragraph number 3 at the bottom of page 4, what that says is that you understand that the guidelines are not binding on the Court and that although you understand that I have to consult those guidelines in deciding what sentence to impose in this case, those guidelines are only advisory and I can impose any reasonable sentence in this case up to and including the statutory maximum penalties. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, paragraph number 4 that starts at the bottom of page 4 sets forth the statutory maximum penalties for each of these offenses. I'm





going to go through those with you now.

As to the offense in Count I, the maximum penalty I can impose is a term of imprisonment of 20 years, a fine of $1 million, supervised release for life with a minimum term of three years and a mandatory special assessment of $100.

Do you understand those are the maximum penalties I can impose as to the offense in Count I?

THE DEFENDANT: Yes, I understand.

THE COURT: As to the offense in Count II, they are the same maximum penalties, do you understand that, as the offense in Count I?

THE DEFENDANT: Yes, your Honor.

THE COURT: As to Count III, the maximum penalty I can impose is a term of imprisonment of five years, a fine of $250,000, supervised release for life with a minimum of two years and a mandatory special assessment of $100. That's as to Count III. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: As to Count IV, the maximum penalty I can impose is a term of imprisonment of 10 years, a fine of $250,000, supervised release of up to three

years and a mandatory special assessment of $100. That's as to Count IV. Do you understand that?





THE DEFENDANT: Yes, your Honor.

THE COURT: And finally, Count V provides for a penalty of up to life imprisonment with a mandatory minimum term of five years. Now, is this the one that is required to be imposed to run consecutive to any terms imposed on the other counts?

MS. BECKNER: Yes, your Honor, with respect to Counts I, II and III.

THE COURT: Do you understand, Mr. Nak, and this is not spelled out in the plea agreement, but I want to make sure you understand it, Count V, which is carrying a gun or possessing a gun in connection with a drug trafficking offense, carries a maximum term of life, but it also does carry a mandatory minimum term of five years, and the law says that that term of five years has to run consecutive to any term of imprisonment I impose as to the offenses in Counts I, II and III of the Indictment? Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you have any questions about that?

THE DEFENDANT: No questions.

THE COURT: Okay. Count V also carries a fine of up to $250,000, a term of supervised release of up to five years and a mandatory special assessment of

$100. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, if you look at paragraph -- it should be (f).

MS. BECKNER: I'm sorry, your Honor.

THE COURT: At the bottom of that page, do you see where it says if Counts I, II, III, IV and V were to run consecutively? Do you see that?

THE DEFENDANT: Yes, I see that.

THE COURT: What that means, Mr. Nak, is this. I can impose all of those maximum penalties to run one after the other, consecutively. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: And I can do that without giving you any opportunity to withdraw this guilty plea. Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: Okay. And so if I were to impose those sentences to run consecutively, that is, one after the other, you would face a maximum penalty of life imprisonment, a fine of $2,750,000, a term of supervised release for life and mandatory special assessments of $500.

Do you understand those are the total maximum

penalties I can impose in this case?
        THE DEFENDANT: Yes, I do understand.
        THE COURT: Do you have any questions about that?
        THE DEFENDANT: No questions, your Honor.
        THE COURT: Would you skip ahead to paragraph number 10 at the bottom of page 8. What that paragraph of the plea agreement says is that you understand that it's up to the Court alone to make all sentencing decisions. Do you understand that?
        THE DEFENDANT: Yes.
        THE COURT: So even though your lawyer may have given you some estimate of where he thinks you're going to fall in the guideline range and even though you've come to some agreement with the Government as far as what recommendation they will make, I don't have to follow the Government's recommendation, nor do I have to follow what your lawyer asks for. Do you understand that?
        THE DEFENDANT: Yes, I understand.
        THE COURT: Basically what it means is that there's no guarantee here of what sentence you're going to get. Do you understand that?
        THE DEFENDANT: Yes.
        THE COURT: Would you flip the page over and

look at paragraph number 11 on page 9. What that paragraph says is that you understand that you may have a right to file an appeal from any sentence I impose. However, the agreement you've made with the Government is this, that if the sentence I impose is within the guideline range, whatever I determine that range to be, or if I sentence you below that range, you've given up your right to take an appeal. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: So if at the day of sentencing I impose a sentence that is within that guideline range and you still think that it's too harsh a sentence, you've given up your right to go and complain about it to the Court of Appeals. Do you understand that?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: On the other hand, if I impose a sentence that the Government thinks is too lenient, the Government has not given up its right to take an appeal and they can go to the Court of Appeals and ask them to vacate the sentence and send the case back for resentencing. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. Now, are those the terms of the plea agreement as you understood them at the time that you signed this plea agreement?



THE DEFENDANT: Yes.

THE COURT: Do you have any questions about the

plea agreement?

THE DEFENDANT: No questions, your Honor.

THE COURT: Has anybody made any promises to you or any assurances to you about what sentence you're going to get?

THE DEFENDANT: No. No, your Honor.

THE COURT: No?

THE DEFENDANT: No.

THE COURT: Has anyone in any way attempted to force you to plead guilty in this case?

THE DEFENDANT: No, your Honor.

THE COURT: Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT: Yes, I am, your Honor.

THE COURT: Do you understand that these offenses to which you are pleading guilty are felony offenses?

THE DEFENDANT: Yes, I understand that.

THE COURT: Do you understand that if your plea is accepted, you will be adjudged guilty of those felony offenses?

THE DEFENDANT: Yes.

THE COURT: And do you also understand that that



adjudication of guilt may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess any kind of firearm?

THE DEFENDANT: Yes, I understand.
THE COURT: Are you an American citizen?
THE DEFENDANT: No, I'm not.
THE COURT: Do you also understand that an adjudication of guilt on these charges may result in your being deported from the United States?
THE DEFENDANT: Yes.
THE COURT: Mr. Nak, do you understand that in the federal system parole has been abolished and what that means is that if I sentence you to prison, you will not be released early on parole?
THE DEFENDANT: Yes, I understand.
THE COURT: I know that by signing the plea agreement and coming to court, you've indicated you want to plead guilty; but before I can accept your plea, I have to make sure you understand what rights you're giving up. I'm going to go through those with you now.
Do you understand that you have a right to plead not guilty to any offense charged against you and to persist in that not guilty plea?





THE DEFENDANT: Yes.
THE COURT: Do you understand that you would then have the right to a trial by jury?
THE DEFENDANT: Yes.
THE COURT: Do you know what a jury does?
THE DEFENDANT: Yes.

THE COURT: What does a jury do?
THE DEFENDANT: A jury, to determine if I'm guilty or not.
THE COURT: That's right. And you've looked over at the jury box here, so you know that you'd have 12 people who would hear the case and decide whether or not you're guilty.
THE DEFENDANT: Yes.
THE COURT: Do you also understand that at trial you would be presumed to be innocent and the Government would have to prove your guilt beyond a reasonable doubt?
THE DEFENDANT: Yes.
THE COURT: That at trial you would have the right to the assistance of a lawyer for your defense?
THE DEFENDANT: Yes.
THE COURT: That you would have the right to see and hear all the witnesses and have them cross-examined in your defense?





THE DEFENDANT: Yes, your Honor.
THE COURT: That at trial you would have the right to remain silent unless you voluntarily elected to testify in your own defense?
THE DEFENDANT: Yes.
THE COURT: And do you understand that you would have the right to the issuance of subpoenas to compel the attendance of witnesses to testify in your defense?

THE DEFENDANT: Yes, your Honor.
THE COURT: And do you understand that if you decided not to testify or to put on any evidence at all, that those facts could not be used against you at trial?
THE DEFENDANT: Yes.
THE COURT: Finally, do you understand that by entering a plea of guilty to these charges and if your plea is accepted by the Court, there will be no trial and you will have given up your right to a trial as well as all of those rights associated with a trial which I've just described for you?
THE DEFENDANT: Yes.
THE COURT: Now, Mr. Nak, I'm going to ask the United States Attorney to summarize the evidence that the Government would present if this case were to go to trial.





I want you to listen very carefully to what Ms. Beckner is going to say. When she's through, I'm going to ask you whether you admit that you committed these offenses and I'm going to ask you whether you admit that the facts are as she's about to place them on the record. You can have a seat, but listen carefully.
Ms. Beckner, please.
MS. BECKNER: Yes, your Honor. On November 8th, 2006, officers with the Providence Police Department

executed a search warrant at 16 Maplehurst, Providence, Rhode Island.

The apartment was leased to Jennifer Audette, who resided at the apartment with Suphearoth Aing; the Defendant, Samoeun Nak; and Nak's girlfriend, Diane Luis.

In the bedroom shared by Luis and Nak, officers found narcotics and a firearm. On top of the dresser there was an identification and paperwork belonging to Nak, the top of a digital scale with cocaine residue and a gold cardboard box containing marijuana, crack cocaine and powder cocaine.

In the top left dresser drawer, officers found 34 plastic bags of marijuana and a firearm. In the top right dresser drawer, officers seized more powder





cocaine. In the closet, officers found approximately 130 grams of marijuana. And in another closet of the same bedroom, officers found $5,524 inside three DVD cases.

Detectives conducted field tests on all drugs seized, and the field tests were positive. A narcotics officer would testify at trial that the quantity of crack cocaine, powder cocaine and marijuana seized was consistent with distribution.

On the kitchen table, officers found a sandwich bag box containing a digital scale, scissors, plastic bags, rubber bands and Scotch tape, all of which are

items used to package narcotics for distribution.

Also located in the kitchen was a coffee pot containing cocaine residue and four more sandwich bag boxes.

Back at the police station, after being advised of his rights, Nak told the officers that the drugs were his and that he sold crack cocaine, powder cocaine and marijuana.

When asked about the coffee pot, he told the officers that he did not know how to cook crack cocaine but that he had an acquaintance come over and cook his powder into crack.

He also admitted that he knew he should not





possess the gun because he was a convicted felon. Nak told the officers that he bought the gun on Cranston Street for $50 several years prior and that he kept the gun to protect his stuff.

The firearm was manufactured outside the State of Rhode Island. Nak has a prior felony drug conviction punishable by a term of imprisonment exceeding one year, and he kept this firearm to protect his narcotics.

The drugs had been sent to the Rhode Island Forensic Science Laboratory for analysis, and the results are still pending.

THE COURT: Mr. Nak, did you hear the summary of evidence that the Government would present if this case

were to go to trial?

THE DEFENDANT: Yes, I did.

THE COURT: Is there anything that Ms. Beckner said that you wish to correct?

THE DEFENDANT: No, your Honor.

THE COURT: In other words, you agree that everything she said is true?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you admit that you possessed the marijuana, the crack and the cocaine she described and that you possessed it with the intent to distribute





that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also admit that you possessed the firearm she described and that you did so in connection with your drug trafficking activities?

THE DEFENDANT: Yes.

THE COURT: Finally, you admit that you have a -- that you had a felony conviction prior to the date that that gun was seized from your possession?

THE DEFENDANT: Yes.

THE COURT: And with respect to the other facts that Ms. Beckner placed on the record, you admit all of that as well?

THE DEFENDANT: I do, yes.

THE COURT: Do you have any questions before I take your plea?

THE DEFENDANT: No questions, your Honor.

THE COURT: Okay. I'll ask you how you plead to the charges in Counts I through V, inclusive, guilty or not guilty.

THE DEFENDANT: Guilty, your Honor.

THE COURT: You can have a seat.

The Court has heard from the Government with respect to the evidence it would present if this case were to go to trial. The Court has also questioned the





Defendant regarding his understanding of the nature of these proceedings and the consequences of entering a plea of guilty to these five charges.

The Court is satisfied that the Defendant, Samoeun Nak, is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of his plea and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses charged in the Indictment.

His plea is, therefore, accepted; and the Defendant is now adjudged guilty of the offenses charged in Counts I through V of the Indictment.

Mr. Nak, the probation office will be preparing a pre-sentence report that I will use in determining an appropriate sentence in your case. I'm advising you that the probation officer will want to interview you

for information to be included in that report and that you may have your attorney present during that interview. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I'm also advising you that both you and your lawyer will have an opportunity to read that pre-sentence report and make whatever corrections or





objections you might have to it before the sentencing hearing and, finally, that both you and your lawyer will have an opportunity to speak on your behalf at the sentencing hearing, which I'm scheduling for Friday, April 20th, at 9:30 a.m.

Mr. Gulick, is that day okay for you?

MR. GULICK: Yes, your Honor.

THE COURT: Ms. Beckner?

MS. BECKNER: Yes, your Honor.

THE COURT: Now, I know that the Government in this case filed two documents along with the plea agreement, and I'm a little perplexed by what exactly we have.

There's a consent decree that was signed apparently by the Government and the Defendant and counsel. Then there's a preliminary order of forfeiture. So tell me what it is that we're trying to do here.

MS. BECKNER: Yes, your Honor. With respect to the firearm, it's simply for the firearm and to make

sure that the agents, after this case is complete, are going to be able to destroy this firearm, is why we're doing it.

I would actually feel more comfortable, if the Court would not mind, if I could check once again with





Mike Iannotti, our forfeiture AUSA, as to the timing of the signing of the preliminary order. The more I've thought about it, I could be mistaken that it should be signed now. It might need to be signed at sentencing when the Court orally pronounces forfeiture of the firearm. So I would feel more comfortable if I could call the clerk after I've checked.

THE COURT: That's fine. I've never seen one filed with the plea agreement. That's why I had a question about it.

So why don't you talk to your forfeiture expert. And I'm sure, Mr. Gulick, Mr. Nak's already indicated he doesn't want any part of this thing. You're not going to get it ever again. You're never going to have another one in your hands ever again. So you can work that out, and just let us know what it is that you need.

Anything further today?

MS. BECKNER: Not from the Government, your Honor.

MR. GULICK: No, your Honor.

THE COURT: The Defendant is remanded.

(Adjourned)

Karen M. Wischnowsky, RPR-RMR-CRR

30

C E R T I F I C A T I O N

I, Karen M. Wischnowsky, RPR-RMR-CRR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

Karen M. Wischnowsky, RPR-RMR-CRR

________________________________________

Date

Karen M. Wischnowsky, RPR-RMR-CRR